A. H. KEITH *v.* PROCTOR and WELLS, and JOHN MORRIS *v.* A. H. KEITH.

1. FRAUDULENT CONVEYANCE. W. made a fraudulent conveyance of certain lands to M., who afterward, by direction of W., conveyed the same by absolute deed to P., but, in reality, to secure a debt due from W. to P. The deed from M. to P. recited a false consideration, but P. was not present, and knew nothing of the execution of the deed until it was afterward sent to him. *Held*, that P. had a right, as against the other creditors of W. as well as against W. himself, to retain the legal title to the lands to secure the payment of the debt to W., he having had no knowledge of nor participation in the fraudulent design of W. in having the legal title conveyed to him.

2. JUDGMENT. *Setting aside. Satisfaction of.* A judgment creditor of W. had execution issued and levied on the lands which had been conveyed to P., and purchased the same at the execution sale by bidding the amount of his judgment thereon. *Held*, that as said judgment creditor might well believe that P. had participated with W. in the attempt to hinder and delay his creditors, he had a right in equity to have the satisfaction of his judgment set aside.

---

FROM M'MINN.

---

Appeal from the Chancery Court.

BLIZZARD & BRADFORD for Keith.

MAYFIELD & BRANT and CATE & VANDYKE for Proctor.

NICHOLSON, C. J., delivered the opinion of the court.

The decree of the chancellor is acquiesced in by all the parties in these several cases except John Morris, who alone has appealed.

Morris obtained judgment against Wells in August, 1867, for over $2,000, had execution issued and levied on the land in controversy as the property of Wells. The land was sold in April, 1869, and bid off by Morris at $1,450, which was credited on his judgment, and a sheriff's deed taken for the land.

In May, 1867, Miller, in whom was the legal title of the land, but which really belonged to Wells, under direction of Wells conveyed the land to Proctor by absolute deed, but in reality as security for between three and four thousand dollars, owing by Wells to Proctor. The deed from Miller to Proctor was made several months before Morris obtained his judgment.

Morris claims that he got a good title by his purchase under his levy and sale upon the ground that Wells had made a fraudulent conveyance of the land to Miller in 1866 to secure a debt to Miller of seven or eight hundred dollars, the land being worth from six to ten thousand dollars. But Wells had paid the debt to Miller, and being indebted to Proctor over $3,000, in whom was the naked legal title, to convey the land to Proctor to secure him in the debt of over $3,000, or as Proctor claimed, of $3,880, owing

to him by Wells. The deed was absolute on its face, although Proctor only claimed to hold the title as security for his debt. The consideration, as expressed in the deed as having been paid by Proctor to Miller, was $10,000. In fact, Proctor paid Miller nothing, but Miller made the deed by direction of Wells. It does not appear that Proctor knew anything of the terms of the deed until after it was executed by Miller and sent from Pennyslvania to Tennessee for registration, and then forwarded to Proctor. Proctor's claim is fully proven to the amount of $3,000, and to secure this, upon giving Wells three years' time for payment, he agreed to take a conveyance of the land.

There is much in the record to show that Wells was actuated by fraudulent purposes in conveying the land to Miller, and also in inserting a consideration of $10,000 in the deed from Miller to Proctor. But the record furnishes no evidence that Proctor had any knowledge of Wells's fradulent purposes, or that he in any way participated in them. He had a bona fide debt, as he insisted, of nearly $4,000 against Wells, and his sole object, as far as the record shows, was to secure this debt. The facts fully rebut any presumption of fraud arising from the statement of a false consideration in the deed. He cannot, therefore, be visited with the consequences of Wells's fraudulent conduct, but was entitled to hold his title as security for the amount of his debt.

It follows that when Morris obtained his judgment and levied his execution on the land, the legal title

was in Proctor, and consequently Morris got no title by his purchase under his execution. The chancellor so rules, and we affirm his decree in this respect.

But the chancellor also held that Morris could not have the satisfaction of his judgment as to the $1,450 bid by him set aside. In this we are of opinion there was error. Under all the circumstances, Morris might very well believe that Proctor had participated with Wells in the attempt to hinder and delay his creditors. For his mistake in his view of the facts, it would be inequitable to make him lose the amount of his bid. This portion of the Chancellor's decree will be reversed, and a decree entered here setting aside the satisfaction and restoring him to his full judgment.

In all other respects the decree will be affirmed. The costs of this court will be divided, Proctor paying one-third and the other parties two-thirds.